UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BILL LOCKRIDGE, d/b/a
LOA OUTDOOR ADVERTISING
AGENCY,**

        Plaintiff,

vs.                    **Case No.: 8:03-CV-1246-T-27EAJ**

**CITY OF OLDSMAR, FLORIDA,**

        Defendant.

_____/

<u>**REPORT AND RECOMMENDATION**</u>

Before the court are Plaintiff's **Motion for Preliminary Injunction** (Dkt. 18), Plaintiff's memorandum in support (Dkt. 19) and Defendant's memorandum in opposition (Dkt. 32); Defendant's **Suggestion of Mootness** (Dkt. 31) and Plaintiff's response (Dkt. 40); Plaintiff's **Motion to Strike Portions of Defendant's Response in Opposition to Plaintiff's Motion for Preliminary or Permanent Injunction and Supporting Exhibits** (Dkt. 38) and Defendant's memorandum in opposition (Dkt. 47); **Defendant's Motion to Strike Argument Contained in Plaintiff's Second Notice of Supplemental Authority** (Dkt. 59) and memorandum in support (Dkt. 60); and various supplemental notices of authority filed by both parties (Dkts. 46, 51, 53, 54, 55, 57, 61, 62, 63, 64, 67, 68, and 73).[1]

_____

[1] The district court has referred this matter to the undersigned for consideration and a Report and Recommendation (Dkt. 20). <u>See</u> Local Rules 6.01(b) and 6.01(c), M.D. Fla.

An evidentiary hearing was held before the undersigned on July 12, 2004, and a transcript of the hearing was filed on September 9, 2004 (Dkt. 58) hereinafter (T).

Plaintiff, Bill Lockridge, d/b/a LOA Outdoor Advertising d/b/a Lockridge Outdoor Advertising Agency ("Mr. Lockridge" or "Plaintiff") seeks an order preliminarily enjoining Defendant, the City of Oldsmar, Florida ("the City"), from enforcing its former sign ordinance. Plaintiff additionally seeks a declaration by the court that the former sign ordinance is "wholly void and of no effect." (Dkt. 19 at 2).

**Background**

The facts of this case are mostly undisputed. Plaintiff applied for several permits to erect signs within the City. Each permit was denied pursuant to the City's land development code which prohibits billboards. Plaintiff filed a complaint alleging that the City's then existing sign ordinance ("former ordinance") violated the guarantees of the Fist Amendment regarding speech. Roughly one year after Plaintiff filed his complaint, and subsequent to filing the instant motion for preliminary injunction, the City amended its sign ordinance ("current ordinance").

Plaintiff's complaint launches a facial attack on the former sign ordinance, arguing, <u>inter alia</u>, that the former ordinance (1) constitutes a prior restraint on speech; (2) grants the City

2

Council unbridled discretion in licensing speech;[2] (3) lacks required procedural safeguards such as time limits for application processing, appeals, and variances, and a provision for judicial review of permit denials; (4) violates equal protection by favoring commercial speech over non-commercial speech and by applying the ordinance to citizens and other entities, including governmental entities, in a disparate manner; (5) is impermissibly vague, broad and misleading; (6) unduly burdens the ability of citizens and property holders to communicate messages using fundamental methods of speech, such as yard signs; (7) places restrictions on flags which are more onerous than those previously declared invalid by the Eleventh Circuit; (8) allows City officials to remove non-conforming signs without payment of compensation to the sign owner; and (9) employs a content-based rather than content-neutral permitting scheme.[3]

---

[2] For example, Plaintiff alleges that the former ordinance vests impermissible discretion in City officials to decide: (1) whether to waive the permit fee; (2) when an application should be granted or denied; (3) when an appeal of a denial of an application should be heard; (4) what messages constitute fine works of art or traditionally accepted patriotic and religious displays; and (5) whether an organization is charitable in nature in order to be exempt from some permitting requirements.

[3] Plaintiff alleges that the former ordinance is content based because the City prohibits certain messages signs may display and also exempts certain types of signs from the permitting scheme based upon the content of the message the exempt sign displays (Dkt. 1 at 3-4). For example, the city bans signs which contain the words "warning" "look" and "drive in" as traffic hazards. (Former Sign Ordinance § 13.4.5(3)). Further, Plaintiff alleges that the ordinance exempts the following signs from regulation

In addition, Plaintiff challenges the former sign ordinance as it was applied to deny his permit applications.  Plaintiff argues that the former ordinance, which excluded all "off-premises signs", was a content-based regulation of speech.  Specifically, he contends that the City's use of the distinction between "off-premises signs" (which advertise or relate to persons, places, things and events which are located on other premises) and "on-premises signs" (which advertise or relate to persons, places, things and events which are on the premises where the sign is located) to allow some signs and not others is an unconstitutional content-based regulation of protected First Amendment speech.

Plaintiff's complaint seeks monetary damages pursuant to 42 U.S.C. § 1983 for vindication of his First Amendment rights and attorney's fees and costs pursuant to 42 U.S.C. § 1988, preliminary and permanent injunctive relief, mandamus relief and declaratory relief.

As previously stated, approximately one year after Plaintiff filed his complaint, the City adopted a new sign ordinance.  The City contends that the adoption of the new ordinance has mooted

---

based upon the content of the message such exempt signs display: miscellaneous traffic and other official signs of any public or government agency or signs used as aids to service or safety, tablets, grave markers, headstones, fine works of art, temporary signs displaying messages about traditionally accepted patriotic or religious holidays, temporary window signs, residential mailboxes, residential subdivision and development signs and any signs on sites listed in the National Register of Historic Places (Dkt. 1 at 4-5).

Plaintiff's facial challenges of the former ordinance and Plaintiff's request for an order enjoining the City from enforcing the former sign ordinance. Plaintiff disagrees; however, at the preliminary injunction hearing, Plaintiff represented that he is not seeking to enjoin the enforcement of the new ordinance as his counsel had insufficient time to study it.

### Findings of Fact

1. Plaintiff is in the business of buying and leasing land upon which to post outdoor advertising signs.

2. Defendant City is a political subdivision of the State of Florida.

3. On May 16, 2003, Plaintiff submitted eight applications for permits to erect commercial outdoor advertising signs at nine locations within the City.[4] Plaintiff states that he had secured leases from property owners for the proposed signs in question.[5]

---

[4] Plaintiff refuses to stipulate that the disputed applications were submitted for the purpose of obtaining permits for "billboards" (Dkt. 41 at 2). The court, however, finds that the disputed structures are, in fact billboards. During the hearing, Plaintiff referred to the structures in question as "billboards." (T at 35, 54). Specifically, Plaintiff stated at the hearing that his applications were filed to obtain permits for billboards (Id. at 72). Further, common sense dictates that the structures Plaintiff seeks to erect are billboards.

[5] Specifically, Plaintiff states, "After substantial efforts, owners of property interests in several different parcels of real estate entered into lease agreements or otherwise authorized Lockridge to seek permission from government officials to post signs at nine (9) different locations in the City. All of these locations are along major roads, and are in commercial or industrial areas." (Dkt. 19, Ex. B at 2).

4.   All nine permits were denied by the City on May 30, 2003 based on § 13.3.3(3) of the former ordinance.[6]   The letter denying the permits was authored by Gregory L. Scoville, the City's Director of the Department of Community Development.   The letter stated in pertinent part:

> This letter is written to recap our conversation on Friday, May 30, 2003 regarding the above referenced [sign applications].  The applications for "commercial outdoor advertising structures" (billboards as defined by the Oldsmar Land Development Code Section 2.1) are specifically prohibited, Section 13.3.3.3.  Land Development Code.[7]

---

[6] During the July 12, 2004 hearing, Defendant sought to introduce Exhibit 11 entitled "Memorandum of Review of Permit Applications from Lockridge Signs", created on May 30, 2004.  The document is a single-spaced, twelve page list of problems with Plaintiff's sign applications, including alleged sign ordinance violations and zoning ordinance violations.  The list is not signed by any member of the City. Plaintiff argues, among other things, that the document was not disclosed to Plaintiff at any time prior to the evidentiary hearing.

The City, on the other hand argues that the document was filed with Mr. Scoville's affidavit (Dkt. 32).  After reviewing the file, the court concludes that contrary to Defendant's statement, the document in question was never filed.  The document however, was listed as an exhibit in Defendant's exhibit list filed July 9, 2004 (Dkt. 36).  Further, in open court on July 12, 2004, Plaintiff filed an objection to Exhibit 11 (among other exhibits).

Therefore, Plaintiff's argument that the document had not been disclosed by Defendant and that he was surprised by the document is without merit.  Further, the court is not persuaded by Plaintiff's "best evidence rule" argument.  Accordingly, Plaintiff's objection to Exhibit 11 is overruled.   However, due to the other factors cited herein, Exhibit 11 has no material bearing on the recommended outcome of the motion for preliminary injunctive relief.

[7] As stated _infra_, section 13.3.3(3) of the former ordinance prohibits "off-premises signs, including billboard signs, except where specifically provided for elsewhere in this Article."

(Pl.'s Ex. 1 at 1).

Attached to the letter authored by Mr. Scoville are six copied pages of the land development code which are applicable to Plaintiff's sign applications.

5.  Since the filing of Plaintiff's complaint on June 16, 2003, the City's sign ordinance has been amended effective July 15, 2004. The ordinance applied by the City to deny Plaintiff's filed applications is no longer in force.

6.  The provision of the former sign ordinance (§ 13.3.3(3)) cited by the City in denying Plaintiff's sign applications provided:

> The following signs shall be prohibited:
> . . .
> (3) Off-premises signs, **including billboard signs**, except when specifically provided for elsewhere in the Article.

(Dkt. 1, Ex. 1 at 4)(emphasis added).

7.  The City conceded at the hearing that if Plaintiff were to resubmit his eight applications for sign permits under the new ordinance, such applications would be denied unless Plaintiff received a variance.

8.  The City asserted at the hearing that it had absolutely no intention of enforcing its former ordinance.

9.  Mr. Scoville testified that, in reviewing sign permit applications, he does not "look at the wording" of the proposed signs in determining whether to grant or deny the sign permits (T

7

at 140).[8]   He further stated that, with regard to Plaintiff's permit applications, he assumed that the proposed signs were off-premises signs or billboards (Id. at 139).   In addition, Mr. Scoville stated that he began working to update the former ordinance in January 2003.   Plaintiff did not apply for sign permits from the City until May 16, 2003.  This action was filed in June 2003.

10.  Plaintiff testified that, prior to applying for the sign permits and leasing the properties where the billboards were to be constructed, he reviewed the former sign ordinance.

## Conclusions of Law

Plaintiff argues that he is likely to succeed on the merits of his as applied and facial attack of the former ordinance because the former ordinance is a content-based prior restraint on speech, favors commercial speech over noncommercial speech, and gives unbridled discretion to City officials in deciding which speech is permitted and which speech is prohibited.   Plaintiff also argues that he has standing and that this case is not moot because Plaintiff claims damages, the City has acted in bad faith, and

---

[8] Further, in Mr. Scoville's affidavit, he stated as follows: "In conducting reviews of sign applications, I do not review any wording or content on the proposed signs.  In fact, I was not in this case, presented with that information.  Nor do I ever base my sign application reviews on the content of the message on the sign. The only time I would even look at the message on a sign is to ascertain if it pertains to an on-premises or an off-premises activity.  Even then, I have never made a decision based on the viewpoint of the message." (Dkt. 33 at 2).

voluntary cessation of an unconstitutional act does not render the case moot because the defendant can resume the unconstitutional act at any time.

In response, Defendant argues that Plaintiff cannot succeed on the merits because a new, constitutional sign ordinance has been enacted, thus, rendering the case moot. Defendant further asserts that the case is not ripe because Plaintiff has failed to exhaust administrative remedies, and that Plaintiff has standing only to challenge the specific section of the former ordinance that was used to deny Plaintiff's sign permits (Section 13.3.3(3)) and Plaintiff cannot bring a facial challenge to the former ordinance. Defendant also argues that the provisions of the ordinance that completely ban billboards (the sections that apply to Plaintiff) are constitutional. In addition, Defendant argues that the former sign ordinance is a content-neutral permitting scheme, and that if there are any unconstitutional provisions, they can be severed.

Before addressing the requirements for preliminary injunctive relief, there are significant threshold issues relating to Plaintiff's request to enjoin the enforcement of a superceded ordinance. In response to the City's suggestion of mootness, Plaintiff advances the legal argument of vested rights. Though Plaintiff's counsel indicated at the evidentiary hearing that it would be imprudent for his client to expend the hundreds of thousands of dollars required to erect the signs, and that such

action would be unlikely pending a final determination of this cause, an order of this court preliminarily enjoining the enforcement of the former sign ordinance, would likely allow Plaintiff to do precisely that.

The purpose of preliminary injunctive relief is to maintain the status quo by "preserv[ing] the relative positions of the parties" before trial. United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)(internal citation omitted).[9] Courts should avoid granting preliminary injunctive relief when, in doing so, the effect of the relief is commensurate with the relief the movant would achieve with a victory on the merits.[10]

To prevail on a Rule 65, Fed. R. Civ. P., motion for preliminary injunction, a movant must establish:

(1) a substantial likelihood of success on the merits;

---

[9] Relying on Canal Auth. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974), the Eleventh Circuit further instructs that "preservation of the status quo enables the court to render a meaningful decision on the merits. Thus, the harm considered by the district court is necessarily confined to that which might occur in the interval between ruling on the preliminary injunction and trial on the merits." Lambert, 695 F.2d at 540. The court notes that a trial on the merits of this case is presently scheduled for January 31, 2005.

[10] See, e.g., Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001)("The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated."; Prairie Band of Potawatomi v. Pierce, 253 F.3d 1234, 1247 (10th Cir. 2001) ("The only reason to disfavor a preliminary injunction that grants substantially all the relief sought is if it would render a trial on the merits largely or completely meaningless.") (internal citation omitted).

(2) a threat of irreparable injury;
(3) that a Plaintiff's own injury would outweigh the
    injury to the non-moving party; and
(4) that the injunction would not disserve the public
    interest.

See This That and the Other Gift and Tobacco, Inc. v. Cobb County,

285 F.3d 1319, 1321-1322 (11th Cir. 2002)(citations omitted).

For the reasons stated hereafter, an in-depth analysis of all

four elements is largely unnecessary because the motion for

preliminary injunction has been mooted by the City's repeal of the

former ordinance and enactment of a new ordinance.  Plaintiff seeks

an order enjoining Defendant from enforcing the former ordinance,

and Defendant has agreed to cease enforcing the former ordinance.

Further, Defendant has no intention of erecting the billboards if

the City were to be preliminarily enjoined from enforcing for

former ordinance.

A.   **Likelihood of Success on the Merits**

In evaluating the movant's likelihood of success on the

merits, the court need not determine that the movant would prevail

on all of the issues presented, but instead that the preliminary

injunction could be ordered upon the movant showing likelihood of

success "at least in part."  Johnson v. United States Dept. of

Agric., 734 F.2d 774, 781 (11th Cir. 1984).

Plaintiff contends that the City's former sign ordinance

violates the First Amendment.  However, in order to evaluate the

likelihood of Plaintiff's success on the merits, the court must

11

determine whether the case is justiciable under the strictures of Article III of the United States Constitution.

**1.   <u>Mootness</u>**

Mootness is a threshold issue because "[p]lainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." <u>Coral Springs St. Sys. v. City of Sunrise</u>, 371 F.3d 1320, 1328 (11th Cir. 2004).[11]

Defendant argues that Plaintiff's challenges to the former ordinance have been rendered moot by the new sign ordinance.  When a change in circumstances or a change in the law alters the posture of the case so that the court cannot give plaintiff meaningful relief, the case is moot and must be dismissed.  <u>Id.</u> at 1328.

A recent Eleventh Circuit case is instructive.  In <u>City of</u>

---

[11] Defendant also tries to defeat jurisdiction by arguing that Plaintiff's claims are barred under the doctrine of ripeness because Plaintiff has failed to exhaust administrative remedies and has failed to administratively appeal the City's denial of his permit applications, apply for the permits under the new ordinance or to seek a variance (Dkt. 32 at 4).  At the hearing, Plaintiff testified that he filed this lawsuit within two weeks of receiving the denial letter (T at 69).  He assumed that he had no appeal rights (<u>Id.</u>)

This court rejects Defendant's argument.  A plaintiff is not required to proceed through the hoops of exhausting administrative remedies when doing so would be futile.  <u>N.B. by D.G. v. Alachua County Sch. Bd.</u>, 84 F.3d 1367, 1379 (11th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1092 (1997).

Since it is apparent that Plaintiff's permits would be denied under the new statute, absent a variance, Plaintiff's claims should not be barred under the doctrine of ripeness for Plaintiff's failure to resubmit the applications.

Sunrise, the plaintiff challenged the constitutionality of a sign ordinance which was later superceded by a new ordinance and argued that the case was not moot under the doctrine of "voluntary cessation" and the Florida doctrine of "vested rights."[12]  371 F.3d 1320.   The defendant successfully argued that the plaintiff's claims were mooted by the enactment of the new ordinance. Id. at 1328.

At the hearing in the instant case, Plaintiff presented similar arguments against the City's mootness claim.

### a.   Voluntary Cessation

It is well settled that "voluntary cessation of a challenged practice does not render a case moot."  See Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998).   Indeed, without a court order proclaiming the complained-of practice unconstitutional, the defendant could resume the practice at will.[13]   However, a case becomes moot when the complained of

---

[12] In City of Sunrise, the plaintiff first indicated his concern about the constitutionality of the former ordinance in a letter to the city dated November 25, 2001. 371 F.3d at 1326.  Sixteen days later, the city enacted a new ordinance. Id.  The plaintiff never re-applied for a permit under the new ordinance but instead filed a lawsuit on December 31, 2001.  Id.

[13] In the present case, Plaintiff has not argued that the Defendant has reinstated the challenged provisions of the former ordinance in the new ordinance, and Plaintiff has not argued that the rights of his client are injured, similarly or in a new manner, by the enactment of the new ordinance.  As stated, Plaintiff's counsel stated he had not reviewed the new ordinance prior to the evidentiary hearing on this matter.

action is repealed by the government and there is no reasonable expectation that the government will return to the prior policy. Id. Further, "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988); See also Troiano v. Supervisor of Elections in Palm Beach County, 382 F.3d 1276, 1283 (11th Cir. 2004) ("when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur.").

The Eleventh Circuit in City of Sunrise determined that the city adopted the new ordinance with the sincere intention of enforcing the new ordinance and abandoning the former ordinance. 371 F.3d at 1332.

At the evidentiary hearing in the present case, the City asserted that it had absolutely no intention of enforcing its former ordinance. It is clear that the City enacted the new ordinance legitimately, in good faith, and only after much deliberation.[14]  Plaintiff's counsel had not examined the new ordinance at the preliminary injunction hearing and made no argument suggesting that the new ordinance had the same

---

[14] As noted, Mr. Scoville testified at the hearing that he began working on updating the sign ordinance in January 2003, well before the filing of Plaintiff's sign applications, and this resulting lawsuit (T at 151).

14

constitutional defects as the former ordinance.  The fact that the City stated that Plaintiff's sign permit applications would be denied under the new ordinance, absent a variance, does not help Plaintiff's case.  Based on the present record, the voluntary cessation doctrine renders moot Plaintiff's claim for preliminary injunctive relief due to the repeal of the former sign ordinance, adoption of the current sign ordinance, and the City's commitment to enforce only the new ordinance.

### b.   Vested Rights

Plaintiff also argues that the case is not moot because Plaintiff has obtained a vested right in the sign permits at issue. Under Florida law, a plaintiff obtains a vested right to a permit only upon the happening of one or both of the following events: (1) the city acts in "a clear display of bad faith" in denying a permit; or (2) equitable estoppel prevents the city from denying a permit.  City of Sunrise, 371 F.3d at 1334.  Plaintiff does not argue that he acquired a vested right in the permits as a result of equitable estoppel, therefore, the court will focus its attention to Plaintiff's bad faith claims.[15]

---

[15] Plaintiff is plainly barred from advancing an equitable estoppel theory because Mr. Lockridge testified that, prior to applying for the sign permits, he reviewed the sign ordinance, particularly, the section banning billboards. (T at 59).  Plaintiff was asked at the hearing, "But you knew when you approached the first land owner in the City of Oldsmar that billboards were prohibited in Oldsmar?" (Id. at 60-61).  Plaintiff replied, "I have to honestly state, yes, I did." (Id. at 61).

The Eleventh Circuit provides several examples of bad faith in regards to permitting schemes in the City of Sunrise decision.[16] One elucidating example is the municipality that "singled out the plaintiff and hastily passed a new ordinance for the purpose of preventing the construction of a filling station despite no evident public benefit in this change." Id. at 1337.  In such cases, "the defendant municipality changed the law in a last-ditch effort to avoid granting a permit or license to a plaintiff." Id.

Relying on City of Sunrise, Plaintiff asserts that the City acted in bad faith because it took approximately one year for the City to amend its ordinance.[17]  The court finds Plaintiff's argument

---

[16] See, e.g. Aiken v. E.B. Davis, Inc., 106 Fla. 675, 143 So. 658 (Fla. 1932)(en banc)(town passed an emergency ordinance to deny a plaintiff's permit after plaintiff had filed for such permit, and the town realized that it had no provision to deny such permit); Dade County v. Jason, 278 So. 2d 311, 311-312 (Fla. 3d Dist. Ct. App. 1973)(a city stalled processing a plaintiff's permit application until a building moratorium went into effect); Margate v. Amoco Co., 546 So. 2d 1091, 1094 (Fla. 4th Dist. Ct. App. 1989) (a city "illegally denied a permit that should have been issued and then tried to pass ordinances that would authorize a denial.")

[17] In City of Sunrise, the court found a lack of bad faith, inter alia, because the city amended its sign ordinance shortly after Plaintiff contacted the city and before the complaint was filed.  The Eleventh Circuit compared the swift change in the law by the City of Sunrise with the six weeks it took the City of Fort Lauderdale to amend its sign ordinance after plaintiff's complaint was filed in National Adver. Co. v. City of Fort Lauderdale, 8 F.3d 36 (11th Cir. 1993) ("National II").  The Eleventh Circuit, in City of Sunrise, did not rely on National II, but instead, distinguished the facts of National II and stated that the time line in National II supported a finding of bad faith.  The undersigned is not bound by the unpublished opinion in National II.  "While unpublished opinions are not binding on this court, they may nonetheless be cited as persuasive authority." United States v. Rodriquez-Lopez,

unpersuasive.  Enacting an ordinance is not accomplished overnight. The new ordinance is thirty-three pages in length (not counting the definitions section and the pictorial aids) and contains several pages of whereas clauses describing the City's purposes behind regulating signs.  Further, as discussed <u>supra</u>, the new ordinance was enacted in good faith after much deliberation and legislative process.  Most importantly, the City had started the process of revising the sign ordinance months before Plaintiff applied for sign permits.  This fact is undisputed.  Thus, Plaintiff's argument that he obtained a vested right in the permits due to bad faith on the part of the City is unlikely to succeed.

      c.   **Damages**

Plaintiff argues that his request for damages staves off mootness.  <u>See</u> <u>Naturist Soc'y, Inc. v. Fillyaw</u>, 958 F.2d 1515, 1519 (11th Cir. 1992)("claim for damages saves from mootness the [plaintiff's] contention that the 'old' park regulations were unconstitutional as applied to it."); <u>Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.</u>, 532 U.S. 598, 608-609 (2001)("so long as the plaintiff has a cause of action for damages, a defendant's conduct will not moot the case.")[18]

---

363 F.3d 1134, 1138 (11th Cir. 2004).

[18] An argument could be made that, if there is an adequate remedy at law (i.e. damages) then injunctive relief, specifically, preliminary injunctive relief described in Rule 65, Fed. R. Civ. P., is not appropriate.  <u>See</u> <u>N. Cal. Power Agency v. Grace Geothermal Corp.</u>, 469 U.S. 1306, 1306 (1984) ("A party seeking an

These cases correctly state the general principle that a claim for damages bars mootness in most situations.  However, those cases addressed a claim's mootness at the merits stage, not on a motion for preliminary injunction.  There is no indication that the City intends to enforce or reenact the former ordinance.  As a whole, however, this case may not be moot because a claim for damages has been asserted.  See Univ. of Tex. v. Camenisch, 451 U.S. 390, 394 (1981)("the issue of preliminary injunctive relief became moot, but an issue of damages remained.")[19]

## Conclusion

Plaintiff has failed to demonstrate a likelihood of success on the merits, one of the four required elements for obtaining preliminary injunctive relief.  Therefore, analysis of the other three elements is unnecessary.  "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to all four elements." Horton v. City of St. Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001)(internal citations omitted).

Due to the repeal of the former ordinance used to deny

---

injunction from a federal court must invariably show that it does not have an adequate remedy at law.") However, because this case involves the alleged infringement of the constitutional right to free speech, an irreparable injury which cannot be undone by monetary compensation or other relief is presumed.

[19] The possibility of a plaintiff's claim surviving a mootness challenge by a request for damages was not addressed in the City of Sunrise case.

Plaintiff's sign permit applications, the relief sought by Plaintiff - to prohibit enforcement of the former ordinance against him pending a trial on the merits - should be denied on the grounds of mootness. Further, Plaintiff's counsel admitted at the evidentiary hearing that even if Defendant were preliminarily enjoined from enforcing the former sign ordinance, Plaintiff would likely not erect the billboards prior to trial "based on the possibility of losing." (T at 219).

Therefore, the undersigned **RECOMMENDS** that Plaintiff's motion for preliminary injunction (Dkt. 18) be **DENIED**.

**II. Plaintiff's Motion to Strike Portions of Defendant's Response in Opposition to Plaintiff's Motion for Preliminary or Permanent Injunction and Supporting Exhibits (Dkt. 38).**

Plaintiff seeks to strike the following which were submitted by Defendant in its response to Plaintiff's Motion for Preliminary or Permanent Injunction:

> (1) Plaintiff's counsels' involvement in other lawsuits unrelated to Mr. Lockridge, page 2 including footnote 1;
> (2) Plaintiff's participation in other lawsuits unrelated to the City of Oldsmar, page 2, footnote 2;
> (3) Inclusion of Complaints filed in other lawsuits, Defense Exhibits 1-8;
> (4) Reference to and inclusion of newspaper articles referring to a tragic mishap in the City of Snellville, Georgia, pages 19-20 and Defense Exhibit 19.

At the evidentiary hearing held July 12, 2004, the court admitted items one through three of the above, and therefore,

Plaintiff's request to strike these references to other suits and copies of the complaints in such suits should be denied as moot.

Item four remains in dispute.  Plaintiff argues that item four should be stricken because billboard accidents in other towns are irrelevant to the present dispute.  This argument is without merit. Evidence of the hazards billboards may present is relevant, probative, and should not be stricken.

Accordingly and upon consideration, it is **RECOMMENDED** that **Plaintiff's Motion to Strike Portions of Defendant's Response in Opposition to Plaintiff's Motion for Preliminary or Permanent Injunction and Supporting Exhibits** (Dkt. 38) be **DENIED.**

### III. Defendant's Motion to Strike Argument Contained in Plaintiff's Second Notice of Supplemental Authority (Dkt. 59)

Defendant seeks an order striking several pages of argument contained in Plaintiff's **Second Notice of Supplemental Authority** filed on August 26, 2004 (Dkt. 57).  Defendant argues that Plaintiff's submission is "nothing more than an attempt to circumnavigate the strict page limits imposed by the Federal Rules of Civil Procedure and this Court's own rules and orders." (Dkt. 59 at 1).

The court notes that it has received thirteen notices of supplemental authority from the parties in this action, eight filed by Plaintiff (Dkts. 51, 54, 55, 57, 62, 63, 64, and 68) and five

filed by Defendant (Dkts. 46, 53, 61, 67, and 73).[20]  The court has reviewed the parties' supplemental submissions carefully and notes that such submissions vary in terms of length and degree of detail. The supplemental submissions have been helpful in this ever-evolving area of the law.

Accordingly, it is recommended that **Defendant's Motion to Strike Argument Contained in Plaintiff's Second Notice of Supplemental Authority** (Dkt. 59) be **DENIED**.

**Dated this** 5th  day of November 2004.


ELIZABETH A JENKINS
United States Magistrate Judge


**NOTICE TO PARTIES**
Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. §636 (b)(1).

---

[20] Technically, Defendant has filed six notices of supplemental authority, however, one such notice of supplemental authority was stricken because it was not signed (Dkt. 52).  Such notice of supplemental authority was re-filed (Dkt. 53).